ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I (DJ 2025-063A)

| A.O.B. Recurrente, v. DEPARTAMENTO DE EDUCACIÓN, Recurrida. | TA2026RA00146 | REVISIÓN procedente de la Oficina de Apelaciones Administrativas del Departamento de Educación. Núm.: QEE-2425-27-06-01944. Sobre: ubicación; compra de servicios; servicios compensatorios y reembolso por gastos por servicios educativos. |
|---|---|---|

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 29 de junio de 2026.

El recurso de revisión que atendemos trata de la desestimación parcial de la querella instada por los señores Jemiliany Boria (señora Boria) y Robert O´Neill (señor O´Neill), en representación de su hija menor, identificada por sus siglas AOB, ante el Departamento de Educación de Puerto Rico (DEPR). Nos corresponde evaluar si el DEPR violó el derecho de AOB a una educación pública, gratuita y apropiada (FAPE, por sus siglas en inglés) y, en consecuencia, procedía otorgar un reembolso a los padres por los gastos incurridos en la matrícula escolar privada de la menor.

Por los fundamentos que expondremos, **revocamos parcialmente** la determinación del DEPR y ordenamos el reembolso de los gastos por concepto de los servicios educativos incurridos por la parte recurrente para los años educativos 2023-2024 y 2024-2025, así como los servicios compensatorios correspondientes al referido periodo.

I

AOB es una estudiante de cuatro años inscrita en el programa de educación especial desde el 31 de mayo de 2023, con el número de registro, 2023013325. La menor cuenta con una determinación de elegibilidad para

el programa de educación especial por trastorno del espectro autista tipo 3. La estudiante fue referida al DEPR a través del programa *Avanzando Juntos*[1] y comenzó a recibir servicios en febrero de 2022, a los 18 meses de edad[2]. Al momento del registro, se entregaron los siguientes documentos: evaluación neurológica, evaluación oftalmológica, de habla y lenguaje, y de autismo.

La evaluación neurológica de la estudiante fue llevada a cabo por la Dra. Beatriz González Abella el **27 de abril de 2023**. En su evaluación neurológica, la doctora ofreció varias recomendaciones para el manejo de los servicios educativos de la estudiante y de acomodo razonable; entre ellos, que AOB mantuviese una rutina consecuente, tanto en la escuela como en el hogar, a través de asignaciones y tareas; el seguimiento de una agenda diaria para los servicios ofrecidos a la menor; la división de tareas complejas en tareas pequeñas; impartir directrices claras; elaborar un plan con la familia para mantener una rutina de tareas educativas en el hogar; un salón de clases con un grupo reducido de estudiantes, en el que se utilice el método ABA[3], entre otros.

Por otra parte, el Dr. Pedro J. Martínez López del *Centro Avanzando Juntos* rindió un informe el **11 de abril de 2023,** sobre la estudiante, y formuló varias recomendaciones; entre estas, que la menor recibiese terapia de habla y lenguaje, ya que demostraba un retraso marcado en esta área para su edad.

Previamente, la patóloga del habla, Ada M. González, había evaluado a AOB el **17 de agosto de 2021**, y la diagnosticó con un atraso moderado en el lenguaje receptivo y expresivo, e inmadurez fonoarticulatoria para

---

[1] Se trata de un programa de intervención temprana auspiciado por el Gobierno de Puerto Rico cuyos esfuerzos están dirigidos a aumentar las oportunidades para el máximo desarrollo de infantes y andarines con rezago en el desarrollo. *Véase*, https://avanzandojuntos.salud.pr.gov/home (última visita, 5 de junio de 2026).

[2] La impresión diagnóstica fue la siguiente: trastorno del espectro autista tipo 3, con retraso en el lenguaje; trastorno mixto del lenguaje receptivo y expresivo; retraso en el desarrollo motor fino viso-motriz; trastorno de procesamiento sensorial y retraso en el desarrollo global.

[3] *Applied Behavior Analysis* o ABA, por sus siglas en inglés; en español, análisis conductual aplicado.

coordinar movimientos del habla, y disfagia[4] sensorial caracterizada por reflejo de vómito activo. La terapista consignó que la estudiante recibía los servicios de terapia de habla y lenguaje en el Centro PIASO[5] desde el 21 de marzo de 2022.

El procedimiento administrativo relacionado la ubicación de AOB comenzó el 13 de junio de 2025, mediante una querella presentada por sus padres[6]. En síntesis, alegaron que el DEPR había violado el derecho de AOB a un FAPE al no proveer una ubicación apropiada para esta, lo que había ocasionado un retraso significativo en su proceso educativo. Sostuvieron que, en consecuencia, a partir de agosto de 2024, se vieron en la obligación de matricular a la estudiante en el Centro de Autismo del Niño (CAN). Por tanto, solicitaron al DEPR que proveyera la ubicación adecuada a la estudiante mediante la compra del servicio en el CAN y servicios compensatorios por los servicios dejados de recibir por la negligencia e incumplimiento con las leyes estatales y federales. Finalmente, solicitaron el reembolso por los gastos de mensualidad y matrícula ascendentes a $18,750.00.

Por su parte, el 23 de junio de 2025, el DEPR presentó su contestación a la querella[7]. En lo pertinente, sostuvo que no tenía una obligación de ofrecer un modelo educativo que no fuese avalado por el COMPU[8], y que el DEPR sí contaba con alternativas de ubicación para atender las necesidades educativas, los servicios relacionados y suplementarios de la estudiante, sin embargo, adujo que los padres de la menor rechazaron las alternativas ofrecidas. Por tanto, alegó

---

[4] La disfagia es la dificultad o imposibilidad de tragar. Véase, *Diccionario de la RAE* en línea.

[5] El Centro PIASO (Programa Intensivo de Alimentación Sensorial Oralmotor) atiende a niños y jóvenes con problemas de alimentación, que diseña un programa individualizado que pretende mejorar el manejo y la tolerancia a los alimentos. *Véase,* www.piasopr.com.

[6] *Véase*, apéndice del recurso, a la entrada 3 del *Sistema Unificado para el Manejo y Administración de Casos* del Tribunal de Apelaciones (SUMAC TA).

[7] *Íd.*, a la entrada 4 SUMAC TA.

[8] *Véase*, nota al calce núm. 9, *infra.*

afirmativamente que correspondía a la parte querellante demostrar lo contrario mediante prueba robusta, clara y convincente.

Tras múltiples trámites procesales, los cuales incluyeron la celebración de reuniones del COMPU[9] - en la cuales el DEPR reconoció no contar con la ubicación apropiada para el año escolar 2025-2026 - el 21 de enero de 2026, se celebró la vista administrativa. Tras la vista, y a petición del foro adjudicativo, las partes presentaron sendos memorandos de derecho. No obstante, el presentado por la parte querellante fue declarado sin lugar por haberse presentado fuera del término para ello.

Sometido el asunto, el 25 de febrero de 2026, la agencia emitió su determinación y declaró con lugar la querella presentada por AOB. Sin embargo, respecto al año académico 2023-2024, el foro determinó que no le daría valor probatorio a los testimonios y a la evidencia presentada en relación con este. En consecuencia, dispuso que no procedía la reclamación de reembolso para el año escolar 2024-2025 por falta de prueba y por los padres haber aceptado un *Plan de Servicios*[10] como consecuencia de la ubicación unilateral de la estudiante. Finalmente, ordenó el reembolso a la parte querellante de los gastos de matrícula y mensualidades correspondientes al año escolar 2025-2026, y a que el DEPR procediera con el trámite de compra de servicios para el resto del año escolar 2025-2026.

Inconforme con la determinación, AOB compareció ante nos y formuló los siguientes señalamientos de error:

> Erró el Departamento de Educación al denegar el reembolso de los gastos incurridos por la parte recurrente por servicios educativos no prestados por la parte recurrida y determinar que ésta era una estudiante unilateral, cuando la parte recurrida incumplió con su deber de proveer una ubicación

---

[9] Las decisiones sobre los servicios que el programa de educación especial le ofrecerá a un estudiante son determinadas por un grupo de profesionales que tienen conocimiento sobre las necesidades académicas y funcionales que presenta el estudiante o experiencia en cómo estas pueden minimizarse en el ambiente escolar. En Puerto Rico, este grupo de profesionales se denomina **Comité de Programación y Ubicación (COMPU)**. *Véase*, Sección 6.1 del *Manual de Procedimientos de Educación Especial del 2020*, a la pág. 56.

[10] El **plan de servicios** es el documento que utiliza el DEPR para establecer los servicios que le serán provistos a los y las estudiantes ubicados por sus padres en escuelas privadas o educación en el hogar (*homeschooling*) durante el año escolar en que se redacta. *Véase*, Sección 9.6 del *Manual de Procedimientos de Educación Especial* del 2020.

publica, gratuita y adecuada, violentando su derecho constitucional a la educación.

Erró el Departamento de Educación al denegar el reembolso de gastos incurridos por la recurrente por servicios educativos no prestados por la recurrida, alegando insuficiencia de prueba cuando se presentó prueba testifical y prueba documental estipulada, la cual establecía las necesidades educativas de la recurrente, lo que constituye un abuso de discreción.

Por la naturaleza de los errores señalados, las partes estipularon la transcripción de la prueba oral (TPO) y, el 29 de mayo de 2026, la parte recurrente presentó su alegato suplementario.

Por su parte, el 24 de junio de 2026, el DEPR, por conducto de la Oficina del Procurador General de Puerto Rico, presentó su oposición.

Con el beneficio de la comparecencia de las partes litigantes, resolvemos.

II

A

La norma reiterada es a los efectos de que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021). Además, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Debido a que toda sentencia o determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude a este Tribunal de Apelaciones tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. *Morán v. Martí,* 165 DPR 356, 366 (2005).

A su vez, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente

administrativo; y, (3) si las conclusiones de derecho fueron correctas. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

Así pues, como norma general, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Por ello, **la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron**. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

De otra parte, las conclusiones de derecho de las agencias administrativas serán revisables en toda su extensión. *Vázquez, et al. v. DACo*, opinión de 21 de mayo de 2025, 2025 TSPR 56, a la pág. 28, 215 DPR ___; *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR, a la pág. 941. Sin embargo, esto no significa que los tribunales podemos descartar libremente las conclusiones e interpretaciones de la agencia. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

En fin, como ha consignado el Tribunal Supremo de Puerto Rico, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR, a la pág. 819, que cita a *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

B

La Ley Federal de Educación Especial, conocida como *Individuals with Disabilities Education Act*, 20 USCA sec. 1400-4182 (IDEA), fue promulgada por el Congreso de los Estados Unidos de América con el propósito de asegurar, entre otras cosas, que todas las personas menores de edad con necesidades especiales reciban una **educación pública, apropiada y gratuita** (FAPE, por sus siglas en inglés). Ello, en atención a las necesidades particulares de cada estudiante. Además, su finalidad es proteger los derechos de estos menores y de sus respectivas familias o tutores.

A tales fines, el estatuto federal dispone que los estados y territorios que reciben fondos federales **tienen** que promover programas de educación especial pública, gratuita y apropiada, diseñados para atender las necesidades especiales y específicas de cada menor. 20 USCA sec. 1415(a). Ello, con el objetivo de prepararlos para oportunidades de empleo, educación avanzada y, sobre todo, para que lleven sus vidas de manera independiente, entre otros aspectos. 20 USCA sec. 1400(d)(1)(A).

Al interpretar el referido estatuto, el Tribunal Supremo de los EE. UU. ha expresado que, para que los estados cumplan su deber de proveer educación pública, apropiada y gratuita, la IDEA requiere un programa educativo razonablemente calculado y dirigido al progreso del menor, a la luz de sus circunstancias particulares. Véase, *Endrew F. v. Douglas County School Dist. RE-1*, 580 US 386 (2017).

En virtud de lo establecido en el estatuto federal y al amparo del mandato constitucional, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 51 de 7 de junio de 1996, conocida como *Ley de Servicios Educativos Integrales para Personas con Impedimentos*, 18 LPRA sec. 1351-1359. Esta ley ratifica el derecho de las personas con impedimentos a recibir una educación pública, gratuita y de acuerdo con sus necesidades, que le permita desarrollarse plenamente y convivir con dignidad. Con este propósito se establecen claramente las responsabilidades y funciones de

todas las agencias que deben brindar servicios especializados y profesionales directos o relacionados con este sector de la población[11].

Por otro lado, el Departamento de Educación promulgó el *Manual de Procedimientos de Educación Especial* del 2020. Entre otras cosas, en su Sección 7.1, este establece que el PEI[12] "[e]s el documento donde se establecen las necesidades académicas y funcionales del estudiante y cómo serán minimizadas a través de los servicios que el programa de educación especial ofrece con el propósito de garantizar que el estudiante reciba una educación pública, gratuita y apropiada conocida como FAPE, por sus siglas en inglés"[13]. Además, el PEI recoge los acuerdos de aquellos servicios educativos, relacionados y suplementarios que el Departamento de Educación se compromete a ofrecerle al estudiante o la estudiante[14]. A su vez, es el documento oficial "[q]ue contiene servicios cobijados por legislación federal y estatal"[15].

El referido manual dispone que tanto la legislación federal como la estatal garantizan el derecho del estudiante con discapacidad a ser educado en igualdad de condiciones que un estudiante sin discapacidad. La IDEA establece que el DEPR tendrá disponible diferentes ambientes educativos (alternativas de ubicación) apropiados donde implementar el PEI para lograr que el estudiante con discapacidad se eduque y consiga progresar en el currículo general[16]. El proceso de ubicación consta de dos procesos:

   a. **La determinación de la alternativa de ubicación** donde se implementará el PEI – Una alternativa de ubicación es el ambiente educativo o el tipo de salón donde el estudiante recibirá su educación y donde se implementará el PEI. Esta ubicación será en una escuela pública, apropiada para el estudiante y de forma gratuita para los padres. En la legislación federal se le conoce como "*Free, appropriate public education*" (FAPE, por

---

[11] Véase, *Exposición de Motivos* de la *Ley de Servicios Educativos Integrales para Personas con Impedimentos.*

[12] IEP o *Individualized Education Program*, por sus siglas en inglés, se refiere al Programa de Educación Individualizado o **PEI**, por sus siglas en español.

[13] *Véase*, Sección 7.1 del *Manual de Procedimientos de Educación Especial*, a la pág. 65.

[14] *Íd.*

[15] *Íd.*

[16] *Véase*, Sección 8.1 del *Manual de Procedimientos de Educación Especial*, a la pág. 80.

sus siglas en inglés). La FAPE garantiza que al estudiante se le:

    i. Ofrezca una educación especial que le permita satisfacer las necesidades particulares que presenta.

    ii. Provea servicios relacionados que ayuden al estudiante a beneficiarse de la educación especial.

    iii. Proporcione esos servicios de manera gratuita.

    iv. Provea adaptaciones y acomodos razonables para ayudarlo a aprender y a participar en el programa de educación general.

    v. Cree un PEI donde se describa los servicios de educación especial que se ofrecerán.

    vi. Enseñe en el ambiente menos restrictivo.

b. **La identificación de una localización** donde se tiene disponible la alternativa de ubicación recomendada. La localización es la escuela pública, donde se tenga la alternativa de ubicación recomendada, que esté más cercana al lugar de residencia del estudiante[17].

De otro lado, le corresponde al DEPR realizar un análisis sobre las alternativas de ubicación apropiada conforme al PEI. La localización de alternativas de ubicación es el proceso que realiza el funcionario del COMPU que representa al DEPR y a la ORE[18] para identificar las escuelas donde se tiene disponible la alternativa de educación recomendada en el PEI.

Ahora bien, cuando el DEPR no tenga disponible la alternativa de educación recomendada en el PEI, este podrá identificar una escuela privada para comprar el servicio educativo a costo público. La determinación de aprobar o rechazar una compra de servicios educativos le corresponde al Secretario Asociado de Educación Especial[19]. La alternativa de ubicación y localización recomendada deberá presentarse en la reunión con el COMPU. Tanto los padres como los miembros del COMPU pueden solicitar

---

[17] Sección 8.2 del *Manual de Procedimientos de Educación Especial*, a las págs. 80-81.

[18] ORE se refiere a la **Oficina Regional Educativa**.

[19] Sección 8.3 del *Manual de Procedimientos de Educación Especial*, a las págs. 90-91.

conocer las localizaciones presentadas, con el propósito de disipar dudas o inquietudes antes de su aceptación[20].

De igual forma, los padres podrán presentar una propuesta de una escuela privada de su predilección. Para ello, deberán entregar la propuesta al FDEE IV[21] que estuviera trabajando la consulta. La propuesta será evaluada por el Secretario de Educación Especial, pero no constituirá un compromiso de parte del DEPR de que se otorgará una compra de servicio o que se aceptará la escuela privada propuesta[22]. Un funcionario de la SAEE[23] asignado podrá realizar un último cotejo de escuelas públicas y las alternativas de ubicación disponibles a nivel Isla y, en la parte del formulario SAEE-07C, podrá:

    i. ofrecer recomendaciones escritas a la ORE y a la escuela sobre la alternativa de ubicación recomendada, como el justificar los recursos necesarios para crear el servicio adecuado para atender la necesidad del estudiante;

    ii. ofrecer recomendaciones de localizaciones disponibles en el DEPR que pudieron ser pasadas por alto y que deben ser consideradas; o

    iii. pasar la consulta al Secretario Asociado de Educación Especial para evaluar si es o no necesario comprar el servicio educativo en una escuela privada e identificar escuelas privadas cercanas al lugar de residencia del estudiante que tiene la alternativa de ubicación recomendada[24].

Por otro lado, el estatuto federal dispone que, en las instancias apropiadas en las que el estudiante necesite del servicio en el sector público, pero este no esté disponible, el Estado podrá comprar en el sector privado tales servicios educativos. 20 USC 1412 (A)(10)(B).

El precitado estatuto también dispone lo siguiente:

(B)    Children placed in, or referred to, private schools by public agencies

    (i)    In general

---

[20] Sección 8.4 del *Manual de Procedimientos de Educación Especial*, a la pág. 94.

[21] FDEE o **facilitador docente de educación especial** adscrito a la Oficina Regional Educativa.

[22] Sección 8.4 del *Manual de Procedimientos de Educación Especial*, a la pág. 96.

[23] SAEE al **Secretario Asociado de Educación Especial**.

[24] Sección 8.4(12) del *Manual de Procedimientos de Educación Especial,* a la pág. 97.

> Children with disabilities in private schools and facilities are provided special education and related services, in accordance with an individualized education program, at no cost to their parents, if such children are placed in, or referred to, such schools or facilities by the State or appropriate local educational agency as the means of carrying out the requirements of this subchapter or any other applicable law requiring the provision of special education and related services to all children with disabilities within such State.

20 USC 1412 (B)(i).

La IDEA también dispone que, cuando se haya recibido una querella al amparo de las Secciones (b)(6) o (k), los padres o la agencia educativa involucrada en la querella tendrán la oportunidad de comparecer a una vista imparcial, que cumpla con el debido proceso de ley. 20 USC 1415 (f)(1)(A). **La decisión del juez administrativo se apoyará en fundamentos sustantivos basados en la determinación de si el menor recibió una educación pública, gratuita y apropiada**. 20 USC 1415 (f)(3)(E)(i).

Es decir, tanto la IDEA como el estatuto local proveen a los padres o tutores que entiendan que los servicios ofrecidos no son apropiados o no van acorde con las necesidades especiales del menor, la opción de presentar una querella y solicitar una vista administrativa ante un oficial examinador imparcial. *Orraca López v. ELA*, 192 DPR 31, 42 (2014).

El DEPR deberá garantizar que la determinación de la alternativa de ubicación del estudiante con discapacidades sea tomada por el COMPU debidamente constituido, a base del PEI redactado, y de conformidad con el principio de la alternativa menos restrictiva, conforme a lo dispuesto en la Sección 300 del Reglamento de la Ley IDEA. Ello incluye los casos en que se considera la ubicación del estudiante en una escuela o instalación privada. Al analizar las posibles ubicaciones para implementar el PEI desarrollado, el COMPU deberá hacerlo mientras respeta las necesidades del estudiante, los recursos, las facilidades existentes y la viabilidad en cada alternativa de educar al estudiante junto a otros que no tengan discapacidades.[25]

---

[25] Sección 8.5 del *Manual de Procedimientos de Educación Especial*, a la pág. 99.

Ahora bien, existen instancias en que los padres ubican a los estudiantes en escuelas privadas. En particular, el *Manual de Procedimientos de Educación Especial* dispone que un niño se considera ubicado por sus padres cuando **el DEPR tiene y ha ofrecido una alternativa de ubicación y una localización pública donde implementar el programa educativo individualizado** y los padres, aun así, deciden que la educación será provista por una escuela privada. Tal acto constituye un rechazo de la alternativa de ubicación pública, gratuita y apropiada, y su localización[26].

De otra parte, cabe destacar que, **como norma general, la IDEA no requiere que se pague por los costos de educación y otros servicios relacionados en una institución privada, si la agencia encargada puso a la disposición del estudiante una educación pública y apropiada, y los padres optaron por la alternativa privada**. 20 USC 1412 (a)(10)(C)(i).

Ahora bien, **la excepción a esta norma general** es que, **procede el reembolso de estos gastos cuando un tribunal o un juez administrativo determina que la agencia no cumplió con la obligación de proveer una educación pública, apropiada, gratuita de manera oportuna ("in a timely manner")**[27]**, y la escuela privada en la cual el estudiante fue ubicado resulta beneficiosa para este**. 20 USC 1412 (a)(10)(C)(ii); 34 CFR 300.148(c). En cuanto a los beneficios educativos en la escuela privada, el Tribunal Supremo de los Estados Unidos dispuso lo siguiente:

> Accordingly, "when a public school system had defaulted on its obligations under the Act, a private school placement is 'proper under the Act' if the education provided by the private school is 'reasonably calculated to enable the child to receive educational benefits.'"

*Florence County Sch. Dist. Four v. Carter*, 510 US 7, 11 (1993), citando a *Board of Ed. of Hendrick Hudson v. Rowley*, 458 US 176, 207 (1982).

---

[26] Sección 9.1 del *Manual de Procedimientos de Educación Especial*, a la pág. 101.

[27] En Puerto Rico, el Artículo 4 de la Ley Núm. 51-1996, dispone que toda persona con impedimento tendrá derecho, entre otros: de "[s]er evaluadas y diagnosticadas con prontitud por un equipo multidisciplinario, que tome en consideración sus áreas de funcionamiento y necesidades, de modo que pueda recibir los servicios educativos y relacionados indispensables para su educación de acuerdo con el programa educativo individualizado para el desarrollo óptimo de sus potencialidades". 18 LPRA sec. 1353(5).

El reembolso de los costos de la educación privada requiere que el Estado pague aquellos gastos que debieron haber sido sufragados y sostenidos en primera instancia si se hubiese preparado un PEI adecuado. *School Committee v. Dept. of Educ*, 471 US 359, 370-371 (1985). El Tribunal Supremo Federal dispuso que tal requerimiento surge del del historial legislativo:

> If a parent contends that he or she has been forced, at that parent's own expense, to seek private schooling for the child because an appropriate program does not exist within the local educational agency responsible for the child's education and the local educational agency disagrees, that disagreement and *the question of who remains financially responsible* is a matter to which the due process procedures established under [the predecessor to §1415] appl[y]." S.Rep. No. 94–168, p. 32 (1975), U.S.Code Cong. & Admin.News 1975, pp. 1425, 1456.

*Sch. Comm. Of Town of Burlington, Mass. v. Dep´t of Educ. of Mass.*, 471 US 359, 371 (1985).

Con relación al reembolso de los gastos, la sección (iii) de la antes referida sección, denominada como *limitation on reimbursement*, enumera los siguientes casos en que el tribunal o el juez administrativo puede reducir o denegar el reembolso; a saber, (1) si en la más reciente reunión para discutir el PEI, los padres no informaron a la agencia su inconformidad con el plan propuesto y su determinación de matricular al estudiante en una institución privada; (2) si diez días laborables antes de matricular al estudiante en una institución privada, los padres no notificaron por escrito a la agencia la información descrita en el párrafo (aa), es decir, si no informaron por escrito su inconformidad con la ubicación propuesta y su decisión de matricular al niño en una escuela privada; (3) si con anterioridad a la remoción del estudiante de la escuela pública, la agencia notificó a los padres que el niño sería evaluado, pero los padres no permitieron que dicha evaluación se realizara; y, (4) si un tribunal determina que la actuación de los padres fue irrazonable. 20 U.S.C. sec. 1412(a)(10)(C)(iii).

Por último, la agencia también será responsable de sufragar los costos de educación de los niños con impedimentos en una institución privada a los cuales se les proveen educación especial y otros servicios relacionados de conformidad con el PEI, si la agencia consintió a que el niño

con impedimento fuese referido a una entidad privada, o si el estudiante con necesidades especiales es ubicado por la propia agencia educativa en una institución privada. 20 USCA sec. 1412 (a)(10)(B)(i).

III

En síntesis, la parte recurrente señala que el DEPR erró al denegar el reembolso de los gastos incurridos por los servicios educativos no prestados, y determinar que AOB era una estudiante de ubicación unilateral. En particular, apunta que el DEPR incumplió con su deber de proveer una ubicación pública, gratuita y adecuada, violentando así el derecho constitucional a la educación de AOB. Además, objeta que la determinación del foro revisor se hubiera amparado en la presunta insuficiencia de la prueba.

La parte recurrente también arguye que el DEPR no le ofreció ni brindó una ubicación adecuada a AOB, quien, contrario a lo planteado por el DEPR, nunca rechazó la ubicación recomendada por el COMPU. Aclara que AOB estuvo ubicada en la escuela pública Amalia Marín, no obstante, esta ubicación ofrecida no cumplía con las recomendaciones de las especialistas, contenidas en las evaluaciones de la menor.

En cuanto a la prueba, sostuvo que no solo se presentó prueba testifical, sino que se presentó prueba documental estipulada que sustentaba las alegaciones expuestas en la querella. Entre ellas, resalta las minutas de las reuniones del COMPU celebradas el 17 de diciembre de 2025, y el 18 de enero de 2026, en las que el DEPR nuevamente reconoció que no contaba con la ubicación adecuada para la estudiante, y el *Exhibit* 6 que es una hoja de referido a la institución educativa privada llamada *Explora*, fechada el **15 de agosto de 2023**, en la cual también se reconoce que el DEPR no contaba con la ubicación adecuada para AOB. Sobre esta última, aclara que la referida escuela no pudo admitir a la menor ya que no contaba con la edad requerida para su admisión.

Sostiene que, con el *Exhibit* 7 (el formulario del SAEE), se evidenciaron las visitas efectuadas por la parte recurrente a las escuelas públicas ofrecidas por la recurrida, las cuales no contaban con cupo.

Finalmente, resalta que, entre la prueba que no fue considerada por el foro administrativo, se encontraba la evaluación neurosicológica realizada por el Dr. Rafael Oliveras, en el que este consignó que el DEPR no contaba con la ubicación adecuada para las necesidades de AOB en la Escuela Amalia Marín. Argumenta que, de los hechos del caso y en atención al derecho citado, surge que el DEPR incumplió con su deber de orientar y ofrecerle a la recurrente una alternativa de ubicación en el sistema público. Por tanto, aduce que el foro administrativo fue arbitrario en su determinación de que no existía prueba suficiente para sostener las alegaciones. En consecuencia, concluye que AOB resulta elegible para el reembolso por los servicios que tuvo que costear en el sector privado y no puede ser considerada como una estudiante de ubicación unilateral.

Por su parte, el DEPR reitera que el peso de la prueba recae sobre AOB y añade que ello implica la presunción de corrección en los ofrecimientos de ubicación y localización realizados por el DEPR, los cuales debían ser rebatidos por la parte recurrente. Insiste en que al omitir la presentación de una versión firmada del PEI, la parte recurrente no logró definir las obligaciones contractuales y operacionales específicas que el DEPR tenía con la menor durante ese periodo; i.e., el año escolar 2023-2024.

De otra parte, resalta que, si bien hay ocasiones en que la IDEA provee para la compra de servicios en el sector privado, el Estado no tiene obligación alguna de pagar por servicios educativos en el mercado privado si le provee al menor una FAPE, y aun así los padres del menor determinan matricularlo en una escuela privada; ello se conoce como **ubicación unilateral**. A eso, el DEPR añade que, en lo concerniente al año escolar 2024-2025, AOB no contaba con un PEI, sino con un *Plan de Servicio*. Argumenta que, debido a ello, AOB se considera como ubicada por sus

padres en escuela privada y solo elegible para servicios complementarios. En miras a probar esa alegación, relata que, el **28 de mayo de 2024**, el COMPU se reunió para discutir el PEI del año escolar **2024-2025**, y en dicha reunión se recomendó la ubicación en educación temprana en un salón especial en la escuela pública Amalia Marín. No obstante, en esa fecha, la madre de AOB suscribió el formulario SAEE- 07C de *Aceptación o rechazo de ubicación pública*. En dicho formulario, la madre **marcó "Acepto" en la alternativa de ubicación, y "Rechazo" a la localización**. En virtud de ello, el DEPR concluye que los padres de AOB rechazaron la escuela pública Amalia Marín, por lo que el DEPR no podía hacer más ofrecimientos, pues ya habían sido rechazados por los padres.

Evaluados los argumentos de las partes, apuntamos que, al amparo de IDEA, el DEPR tiene la obligación afirmativa de proveer un FAPE para cada estudiante matriculado en el programa de educación especial y, si bien el PEI es el documento principal mediante el cual se formalizan los acomodos y servicios a ser provistos a los menores que el Estado tiene a su cargo, no podemos concluir que es el único mecanismo disponible para que una familia demuestre que se incumplió con el derecho de un menor a recibir los servicios que le son adeudados. En esta ocasión, los hechos descritos tanto por la parte recurrente como la recurrida, en conjunto con la prueba documental y el testimonio de la madre, demuestran que el DEPR incumplió con su deber de orientar y ofrecerle a la recurrente una alternativa de ubicación en el sistema público, que cumpliera con el FAPE y propendiera al mejor desarrollo de la menor AOB. Veamos.

De los hechos probados, surge que AOB está registrada en el Programa de Educación Especial del DEPR desde el **31 de mayo de 2023**. El **7 de julio de 2023**, la menor fue declarada elegible para el Programa bajo la categoría de trastorno del espectro autista tipo 3. El **7 de julio de 2023,** se discutió y firmó el PEI para el año escolar 2023-2024. En virtud de ello, el DEPR venía obligado a hacerle un ofrecimiento público. **Debido a que el DEPR no contaba con la ubicación apropiada para AOB, esta fue**

**referida a la escuela privada *Centro Explora* el 15 de agosto de 2023, donde resultó que no había cupo**[28]. Luego de ello, la facilitadora le ofrece tres (3) opciones adicionales de localización; entre esas, la escuela pública Amalia Marín, donde AOB comenzó sus estudios como parte del Programa de Educación Especial del DEPR. Ello, debido a que esta fue la única alternativa disponible y dado a que se había recién creado un salón de educación especial.

AOB asistió a la escuela elemental Amalia Marín desde el **26 octubre de 2023, hasta mayo de 2024**. Mientras estuvo en esa ubicación, AOB estaba en un salón de educación temprana en salón especial. No obstante, la madre de AOB testificó sobre lo inapropiado de la ubicación por falta de personal y de atención a las necesidades particulares de la menor, lo cual redundó en la falta de progreso de la menor y su desdén por acudir a la escuela[29]. Igualmente, testificó sobre su insatisfacción con la escuela y cómo había apercibido a la maestra de que removería a la menor de la escuela[30].

En ese sentido, coincidimos con la parte recurrente respecto a que, en el año escolar 2023-2024, sí hubo un reconocimiento formal de la falta de ubicación para la menor AOB, que se intentó remediar mediante el ofrecimiento en la escuela Amalia Marín. No obstante, los padres de la menor AOB se vieron en la obligación de, a su propio costo, matricular a la menor en una escuela que sí podía atender las necesidades de esta. Ciertamente, quedó probado que, en esta ocasión, el DEPR privó de una ubicación adecuada a la menor, lo que ocasionó que esta se retrasara en su proceso educativo. Por tanto, fue matriculada por sus padres en el *Centro de Aprendizaje del Niño* para evitar que se continuara afectando severamente su desarrollo en la escuela pública Amalia Marín, donde fue

---

[28] *Véase*, apéndice del recurso, entrada 23 SUMAC TA, a la pág. 195. Además, se presentó el *Exhibt* 7, un documento firmado el **7 de julio de 2023**, que establece que no había cupo en la Escuela Urbana de Guaynabo. *Íd.*, a la pág. 196.

[29] *Véase*, TPO, a las págs. 23, 41-115.

[30] *Íd.*, a las págs. 23-67.

ubicada para el referido año escolar. Por tanto, ello no puede ser considerado como una ubicación unilateral.

Cónsono con lo anterior, resolvemos que la agencia es responsable de sufragar los costos de educación en la institución privada, pues quedó establecido que el DEPR consintió a que la menor fuese referida a un centro privado, en vista de que no contaba con la ubicación apropiada para esta y el ofrecimiento provisto resultó en detrimento de su progreso[31].

Añadimos que la IDEA fue promulgada con el fin de ofrecerle al estudiante de educación especial instrucción especialmente diseñada para atender las necesidades únicas de los menores. Aún más, requiere que se ofrezca a los estudiantes de educación especial un programa ambicioso y que le permita progresar de manera apropiada a la luz de sus circunstancias. Véase, *Endrew F. v. Douglas County School Dist. RE-1*, 580 US 386, 402-403 (2017). Cónsono con ello, las agencias concernidas y los foros revisores debemos tener ese progreso como norte y no obstaculizar el acceso a los remedios que tienen disponibles los estudiantes de educación especial. Ello requiere actuar con la prontitud que amerita atender todo asunto relacionado al desarrollo de menores como AOB. Recordemos que, así como justicia tardía no es justicia, la intervención a destiempo, o la falta de ella, puede resultar en rezagos y consecuencias permanentes.

IV

Por los fundamentos expuestos, revocamos parcialmente la determinación del Departamento de Educación de Puerto Rico, por lo que ordenamos el reembolso de los gastos de los servicios educativos incurridos por la parte recurrente para los años académicos 2023-2024 y 2024-2025, así como los servicios compensatorios correspondientes a los referidos periodos.

Notifíquese.

---

[31] Ello, conforme establece la Sección 1412 de la IDEA, 20 USCA sec. 1412 (a)(10)(B)(i).

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones